473 F.3d 413
In re the COUNTY OF ERIE.Adam Pritchard, Edward Robinson, and Julenne Tucker, both individually andon behalf of a class of others similarly situated, Plaintiffs-Respondents,v.The County of Erie, Patrick Gallivan, both individually and in his official capacity as Sheriff of the County of Erie, Timothy Howard, both individually and as Undersheriff of the County of Erie, Donald Livingston, both individually and as Acting Superintendent of the Erie County Correctional Facility, and Robert Huggins, both individually and as Deputy Superintendent of the Erie County Correctional Facility, Defendants-Petitioners,H. McCarthy Gibson, both individually and as Superintendent of the Erie County Holding Center, Defendant.
Docket No. 06-2459-OP.
United States Court of Appeals, Second Circuit.
Submitted: September 12, 2006.
Decided: January 3, 2007.

Frank T. Gaglione, Hiscock & Barclay LLP, Buffalo, NY, for Defendants-Petitioners.
Elmer Robert Keach, III, Law Offices of Elmer Robert Keach, III, PC, Amsterdam, NY; Jonathan W. Cuneo, Charles J. LaDuca, Alexandra Coler, Cuneo, Gilbert & Laduca, LLP, Washington, DC; Gary E. Mason, Nicholas A. Migliaccio, The Mason Law Firm, PC, Washington, DC; Alexander E. Barnett, The Mason Law Firm, P.C., New York, NY; David Gerald Jay, Buffalo, NY; Bruce E. Menken, Jason J. Rozger, Beranbaum Menken Ben-Asher & Biermam LLP, New York, NY, for Plaintiffs-Respondents.
Before JACOBS, Chief Judge, CARDAMONE and MINER, Circuit Judges.
DENNIS JACOBS, Chief Judge.

1
In the course of a lawsuit by a class of arrested persons against Erie County (and certain of its officials) alleging that they were subjected to unconstitutional strip searches, the United States District Court for the Western District of New York (Curtin, J.) ordered the discovery of e-mails (and other documents) between an Assistant Erie County Attorney and County officials that solicit, contain and discuss advice from attorney to client. The County defendants petition for a writ of mandamus directing the district court to vacate that order. The writ is available because: important issues of first impression are raised; the privilege will be irreversibly lost if review awaits final judgment; and immediate resolution of this dispute will promote sound discovery practices and doctrine. Upon consideration of the circumstances, we issue the writ ordering the district court: to vacate its order, to determine whether the privilege was otherwise waived, and to enter an interim order to protect the confidentiality of the disputed communications.

2
* On July 21, 2004, plaintiffs-respondents Adam Pritchard, Edward Robinson and Julenne Tucker commenced suit under 42 U.S.C. § 1983, individually and on behalf of a class of others similarly situated, alleging that, pursuant to a written policy of the Erie County Sheriff's Office and promulgated by County officials, every detainee who entered the Erie County Holding Center or Erie County Correctional Facility (including plaintiffs) was subjected to an invasive strip search, without regard to individualized suspicion or the offense alleged, and that this policy violates the Fourth Amendment.1 They sued the County of Erie, New York, as well as Erie County Sheriff Patrick Gallivan; Undersheriff Timothy Howard; the acting Superintendent of the Erie County Correctional Facility, Donald Livingston; the Deputy Superintendent, Robert Huggins; and the Superintendent of the Erie County Holding Center, H. McCarthy Gibson (collectively, the "County").

3
During the course of discovery, the County withheld production of certain documents as privileged attorney-client communications; a privilege log was produced instead, pursuant to the Federal Rules of Civil Procedure and Local Civil Rules for the Western District of New York. In August 2005, plaintiffs moved to compel production of the logged documents, almost all of which were e-mails. The County submitted the documents to Magistrate Judge Hugh B. Scott for inspection in camera. In January 2006, Judge Scott ordered production of ten of the withheld e-mails,2 which (variously) reviewed the law concerning strip searches of detainees, assessed the County's current search policy, recommended alternative policies, and monitored the implementation of these policy changes.

Judge Scott reasoned that:

4
• These communications "go beyond rendering `legal analysis' [by] propos[ing] changes to existing policy to make it constitutional, including drafting of policy regulations";

5
• The "drafting and subsequent oversight of implementation of the new strip search policy ventured beyond merely rendering legal advice and analysis into the realm of policy making and administration"; and

6
• "[N]o legal advice is rendered apart from policy recommendations."

7
Judge Scott ordered the County to deliver these ten e-mails to the plaintiffs.

8
After considering the County's objections to this order, the district court independently reviewed the disputed e-mails in camera and, applying a "clearly erroneous" standard, overruled the objections, and directed production. This petition for a writ of mandamus followed.

II

9
Ordinarily, pretrial discovery orders involving a claim of privilege are unreviewable on interlocutory appeal, "and we have expressed reluctance to circumvent this salutary rule by use of mandamus." In re W.R. Grace & Co., 984 F.2d 587, 589 (2d Cir.1993). At the same time, the writ is appropriate to review discovery orders that potentially invade a privilege, where: (A) the petition raises an important issue of first impression; (B) the privilege will be lost if review must await final judgment; and (C) immediate resolution will avoid the development of discovery practices or doctrine that undermine the privilege. Chase Manhattan Bank, N.A. v. Turner & Newall PLC, 964 F.2d 159, 163 (2d Cir.1992); In re Long Island Lighting Co., 129 F.3d 268, 270 (2d Cir. 1997). (Although the County argues that any single showing is enough, the test sprouts three prongs; in any event, the County prevails on all three.)

10
(A) This petition raises an issue of first impression: whether the attorney-client privilege protects communications that pass between a government lawyer having no policymaking authority and a public official, where those communications assess the legality of a policy and propose alternative policies in that light.3 The issue is not unimportant.

11
"[T]here is little case law addressing the application of the attorney-client privilege" in the government context. In re Grand Jury Investigation, 399 F.3d 527, 530 (2d Cir.2005); see also Ross v. City of Memphis, 423 F.3d 596, 601 (6th Cir.2005) (same). The issue of first impression here concerns policy advice rendered by a government lawyer, and the distinction between (on the one hand) attorney-client privileged recommendations designed to achieve compliance with the law or reduce legal risk, and (on the other) recommendations made for other reasons, which advice may not be privileged.4

12
(B) Post-judgment relief would be inadequate to protect the privilege, if it exists; this consideration "justifies the more liberal use of mandamus in the context of privilege issues." In re Long Island Lighting Co., 129 F.3d at 271; see also In re von Bulow, 828 F.2d 94, 99 (2d Cir. 1987).

13
A motions panel of this Court denied the County's motion for a stay pending appeal, so the communications at issue are already in plaintiffs' hands. Plaintiffs argue that the dispute is now moot because "the risks associated with the development of discovery practices . . . undermining the privilege . . . have already been realized." Issuing the writ "cannot unsay the confidential information that has been revealed." In re von Bulow, 828 F.2d at 99. In the circumstances presented, the privilege can nevertheless be vindicated by preventing the use of the documents during further discovery (including, for example, in depositions, interrogatories, document requests and pretrial motions) and at trial.

14
(C) To await resolution of this issue pending final judgment risks the development of discovery practices and doctrine that unsettle and undermine the governmental attorney-client privilege. See Chase Manhattan, 964 F.2d at 164. To "encourage full and frank communication between attorneys and their clients," Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), lawyers and clients need to know which of their communications are protected. "An uncertain privilege . . . is little better than no privilege." In re von Bulow, 828 F.2d at 100. The "potentially broad applicability and influence of the privilege ruling" weighs heavily in favor of adjudicating the dispute now. In re Long Island Lighting Co., 129 F.3d at 271.

III

15
The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. United States v. Const. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir.1996). Its purpose is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote "broader public interests in the observance of law and administration of justice." Upjohn, 449 U.S. at 389, 101 S.Ct. 677; see also In re John Doe, Inc., 13 F.3d 633, 635-36 (2d Cir.1994). "The availability of sound legal advice inures to the benefit not only of the client who wishes to know his options and responsibilities in given circumstances, but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1036-37 (2d Cir.1984).

16
At the same time, we construe the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); see In re Grand Jury Investigation, 399 F.3d at 531. The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir.2000); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir.1997).

17
In civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance.5 In re Grand Jury Investigation, 399 F.3d at 532; see, e.g., Ross v. City of Memphis, 423 F.3d 596, 601 (6th Cir.2005) ("[A] government entity can assert attorney-client privilege in the civil context."); In re Lindsey, 148 F.3d 1100, 1107 (D.C.Cir.1998) (per curiam) (noting the existence of "a government attorney-client privilege that is rather absolute in civil litigation"); cf. Proposed Fed. R.Evid. 503(a)(1), reprinted in 56 F.R.D. 183, 235 (1972) (describing a client, for the purpose of defining the attorney-client privilege, as a "person, public officer, or corporation, association, or other organization or entity, either public or private") (emphasis added).

18
The attorney-client privilege accommodates competing values; the competition is sharpened when the privilege is asserted by a government. On the one hand, non-disclosure impinges on open and accessible government. See Reed v. Baxter, 134 F.3d 351, 356-57 (6th Cir.1998). On the other hand, public officials are duty-bound to understand and respect constitutional, judicial and statutory limitations on their authority; thus, their access to candid legal advice directly and significantly serves the public interest:

19
We believe that, if anything, the traditional rationale for the [attorney-client] privilege applies with special force in the government context. It is crucial that government officials, who are expected to uphold and execute the law and who may face criminal prosecution for failing to do so, be encouraged to seek out and receive fully informed legal advice. Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest.

20
In re Grand Jury Investigation, 399 F.3d at 534. Access to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to "promot[ing] broader public interests in the observance of law and administration of justice," Upjohn, 449 U.S. at 389, 101 S.Ct. 677. At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity.

IV

21
A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. Const. Prod. Research, Inc., 73 F.3d at 473. At issue here is the third consideration: whether the communications were made for the purpose of obtaining or providing legal advice, as opposed to advice on policy.6

22
The rule that a confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance is often recited. The issue usually arises in the context of communications to and from corporate in-house lawyers who also serve as business executives. See, e.g., MSF Holding, Ltd. v. Fiduciary Trust Co. Int'l, No. 03 Civ. 1818, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005); Bank Brussels Lambert v. Credit Lyonnais (Suisse), 220 F.Supp.2d 283, 286 (S.D.N.Y.2002); U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F.Supp. 156, 160 (E.D.N.Y.1994). So the question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice. See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1036-37.

23
Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. See generally 1 Paul R. Rice, Attorney Client Privilege in the United States § 7:9 (2d ed.1999). It requires a lawyer to rely on legal education and experience to inform judgment. Ball v. U.S. Fid. & Guar. Co., No. M8-85, 1989 WL 135903, at *1 (S.D.N.Y. Nov.8, 1989) (reasoning that legal advice "involve[s] the judgment of a lawyer in his capacity as a lawyer"). But it is broader, and is not demarcated by a bright line. What Judge Wyzanski observed long ago applies with equal force today:

24
The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the . . . public interest that the lawyer should regard himself as more than [a] predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice.

25
United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 359 (D.Mass.1950). We consider whether the predominant purpose of the communication is to render or solicit legal advice. United States v. Int'l Bus. Machs. Corp., 66 F.R.D. 206, 212 (S.D.N.Y. 1974); see also In re Buspirone Antitrust Litig., 211 F.R.D. 249, 252-53 (S.D.N.Y. 2002) (employing the "primary purpose" standard in assessing whether the attorney-client privilege protects certain documents); In re Grand Jury Proceedings, No. M-11-198, 2001 WL 1167497, at *25 (S.D.N.Y. Oct.3, 2001) (same); Armstrong v. Brookdale Hosp., No. 98 Civ. 2416, 1999 WL 690149, at *2 (E.D.N.Y. Aug. 28, 1999) (same); U.S. Postal Serv., 852 F.Supp. at 163 (applying a "dominant purpose" standard).7

26
The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it. The predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.8 The more careful the lawyer, the more likely it is that the legal advice will entail follow-through by facilitation, encouragement and monitoring.

V

27
The County asserts that the Assistant County Attorney whose advice was solicited could not have been conveying non-legal policy advice because the Erie County Charter (§ 602) confines her authority to that of a "legal advisor," and because "only the County Sheriff and his direct appointees ha[ve] policy-making authority for the [Sheriff's] department." This argument does not assist the analysis much. A lawyer's lack of formal authority to formulate, approve or enact policy does not actually prevent the rendering of policy advice to officials who do possess that authority. A similar consideration may be useful in different circumstances. When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged. In re Lindsey, 148 F.3d at 1106 (citing 1 McCormick on Evidence § 88, at 322-24 (4th ed.1992); Restatement (Third) of the Law Governing Lawyers § 122 (Proposed Final Draft No. 1, 1996)).9 In the government context, one court considered relevant the fact that the attorney seeking to invoke the privilege held two formal positions: Assistant to the President (ostensibly non-legal) and Deputy White House Counsel (ostensibly legal). In re Lindsey, 148 F.3d at 1103, 1106-07. The same is true in the private sector where "in-house attorneys are more likely to mix legal and business functions." Bank Brussels Lambert, 220 F.Supp.2d at 286; accord Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 147 (D.Del.1977). In short, an attorney's dual legal and non-legal responsibilities may bear on whether a particular communication was generated for the purpose of soliciting or rendering legal advice; but here, the Assistant County Attorney's lack of formal policymaking authority is not a compelling circumstance.

28
The predominant purpose of a particular document—legal advice, or not—may also be informed by the overall needs and objectives that animate the client's request for advice. For example, Erie County's objective was to ascertain its obligations under the Fourth Amendment and how those requirements may be fulfilled, rather than to save money or please the electorate (even though these latter objectives would not be beyond the lawyer's consideration).

VI

29
After reviewing in camera the documents listed on the County's privilege log, Judge Scott determined that the ten e-mails at issue here are not privileged. These e-mails, dated between December 23, 2002 and December 11, 2003, passed between the Assistant County Attorney and various officials in the Sheriff's Office (primarily petitioners). The ten e-mails are an amalgam of the following six broad issues:

30
(i) The compliance of the County's search policy with the Fourth Amendment (EC-C-0014, EC-C-0060, EC-C-00119, EC-C-00126 and EC-C-00161);

31
(ii) Any possible liability of the County and its officials stemming from the existing policy (EC-C-0014, EC-C-0060, EC-C-00119 and EC-C-00126);

32
(iii) Alternative search policies, including the availability of equipment to assist in conducting searches that comply with constitutional requirements (EC-C-14, EC-C-0060, EC-C-00108, EC-C-00119, EC-C-00126, EC-C-00161-79, EC-C-00180 and EC-C-00227);

33
(iv) Guidance for implementing and funding these alternative policies (EC-C-14, EC-C-0060, EC-C-00119, EC-C-00126, EC-C-00161, EC-C-00180, EC-C-204-20 and EC-C-00227);

34
(v) Maintenance of records concerning the original search policy (EC-C-00225); and

35
(vi) Evaluations of the County's progress implementing the alternative search policy (EC-C-00204-20 and EC-C-00223-25).10

36
The judge reasoned (inter alia) that because these e-mails "propose[d] changes to existing policy to make it constitutional" and provided guidance "to executive officials within the Sheriff's Department to take steps to implement the new policy ... no legal advice is rendered or rendered apart from policy recommendations." Because the e-mails "go beyond rendering legal analysis," the judge concluded that they were not privileged. We disagree.

37
It is to be hoped that legal considerations will play a role in governmental policymaking. When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice. Public officials who craft policies that may directly implicate the legal rights or responsibilities of the public should be "encouraged to seek out and receive fully informed legal advice" in the course of formulating such policies. In re Grand Jury Investigation, 399 F.3d at 534. To repeat: "The availability of sound legal advice inures to the benefit not only of the client ... but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1036-37. This observation has added force when the legal advice is sought by officials responsible for law enforcement and corrections policies.

38
We conclude that each of the ten disputed e-mails was sent for the predominant purpose of soliciting or rendering legal advice. They convey to the public officials responsible for formulating, implementing and monitoring Erie County's corrections policies, a lawyer's assessment of Fourth Amendment requirements, and provide guidance in crafting and implementing alternative policies for compliance. This advice — particularly when viewed in the context in which it was solicited and rendered-does not constitute "general policy or political advice" unprotected by the privilege. In re Lindsey, 148 F.3d at 1120 (Tatel, J., dissenting).

39
Although the e-mails at issue were generated for the predominant purpose of legal advice, we remand for the district court to determine whether the distribution of some of the disputed e-mail communications to others within the Erie County Sheriff's Department constituted a waiver of the attorney-client privilege. Cf. In re Horowitz, 482 F.2d 72, 81-82 (2d Cir.1973); see also United States v. DeFonte, 441 F.3d 92, 94-95 (2d Cir.2006) (per curiam).

Conclusion

40
The writ of mandamus is granted; the district court's April 17, 2006 order is vacated; the district court is instructed to determine whether the attorney-client privilege was nonetheless waived; pending adjudication, the district court is directed to enter an order protecting the confidentiality of the disputed e-mails.

Notes:

1
We intimate no view as to the underlying merits

2
Certain of these e-mails are better characterized as e-mail chains, because they contain the initial e-mail as well as subsequent responses. Because the chains concern the subject of the original e-mail, for simplicity's sake, we use the term "e-mail" to encompass the entire e-mail "conversation."

3
The parties have not raised the applicability of the deliberative process privilegeSee Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir.2005) ("[T]he deliberative process privilege [is] a sub-species of work-product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." (internal quotation marks omitted)).

4
Respondents assert that this issue is not novel and that it was raised inMobil Oil Corp. v. Dep't of Energy, 102 F.R.D. 1 (N.D.N.Y. 1983). Mobil Oil is useful; but it applies the familiar requirement that a factual communication sent to an attorney is protected by the attorney-client privilege only if the communication was generated for the purpose of securing legal assistance. Id. at 9-10. Because in that case it was "impossible to determine" whether certain factual memoranda were sent to government lawyers primarily for the purpose of securing legal assistance, the government did not discharge its burden to prove that the privilege applied. Id.

5
Certain limitations to the government attorney-client privilege, not implicated here, may render an otherwise protectable communication unprotectedSee Nat'l Council of La Raza, 411 F.3d at 360-61 (holding that the government could not invoke the attorney-client privilege to bar disclosure of a legal memorandum where the government had incorporated it into its policy by repeatedly, publicly and expressly relying upon its reasoning and had adopted its reasoning as authoritative within the agency); see also Niemeier v. Watergate Special Prosecution Force, 565 F.2d 967, 974 (7th Cir.1977); Falcone v. IRS, 479 F.Supp. 985, 989-90 (E.D.Mich. 1979).

6
As discussedinfra in Part VI, we remand to the district court to consider whether petitioners waived the privilege through distribution of certain e-mails. However, that is not the focus of this opinion, and we intimate no view of its resolution on remand.

7
Indicta, this Court has observed that "[t]he [corporate attorney-client] privilege is clearly limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." In re John Doe Corp., 675 F.2d 482, 488 (2d Cir.1982) (emphasis added). However, because the Court held that the corporation had waived the privilege (and because there was cause to believe that the crime-fraud exception applied), the issue was not further considered. Id. at 488-89. As discussed in the accompanying text, however, we think the predominant-purpose rule is the correct one. Accord In re Lindsey, 148 F.3d at 1106; In re Grand Jury Subpoena, 204 F.3d 516, 520 n. 1 (4th Cir.2000) (requiring that the confidential communication must be made "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding"); Montgomery County v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir.1999) (same); United States v. Robinson, 121 F.3d 971, 974 (5th Cir.1997) (same); see also Rice, Attorney Client Privilege in the United States § 7:5 ("[T]here is general agreement that the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultation is to seek legal advice or assistance." (emphasis in original)); 24 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5490 (1986) (observing that while this issue is "seldom discussed by the courts and writers," the majority rule is the "dominant purpose doctrine").

8
Importantly, redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communicationSee, e.g., United States v. Weisman, No. 94 Cr. 760, 1995 WL 244522, at *4 (S.D.N.Y. Apr.26, 1995) (recognizing the availability of redaction to protect legal advice in hybrid documents); Detection Sys., Inc. v. Pittway Corp., 96 F.R.D. 152, 155 (W.D.N.Y.1982) ("In those instances where both privileged and non-privileged material exist, the privileged material has been deleted.").

9
Normally, the capacity in which a lawyer receives or generates a communication is related to determining whether the communication actually involves a lawyer; in other words, a lawyer not acting in her capacity as a lawyer is not a lawyer for the purpose of the attorney-client privilege

10
Because these documents have been and will be under seal, we limit our description, to the extent possible, to that which the rules require be disclosed: "the general subject matter of the document." W.D.N.Y. Civ. R. 26(f)(1)(B)(i)(I I). No description by this Court or by the trial court should be taken to prejudge any issue relevant to the underlying claim