BRAUNER vs. VALLEY, 101 Mass. App. Ct. 61

 
 CATHERINE BRAUNER & another [Note 1] vs. DOYLE C. VALLEY, personal representative. [Note 2]

101 Mass. App. Ct. 61
 October 18, 2021 - May 6, 2022

Court Below: Superior Court, Norfolk County
Present: Wolohojian, Sullivan, & Ditkoff, JJ.

 

No. 20-P-1085.

Practice, Civil, Dismissal, Motion to dismiss, Discovery, Waiver, Interlocutory appeal. Privileged Communication. Waiver. Attorney at Law, Attorney-client relationship. Evidence, Privileged communication. Accountant.

The plaintiffs in a civil action were entitled to invite dismissal of their claims as a sanction in order to obtain appellate review of a discovery order, and their petition under G. L. c. 231, § 118, first par., for relief from a single justice of this court, who left the discovery order undisturbed, did not foreclose full panel review in a postjudgment appeal. [67-69]

The plaintiffs in a civil action, by bringing a negligence action against their deceased mother's former attorney, did not thereby place at issue their communications with other lawyers concerning topics alleged in the complaint, and thus did not waive any privilege with respect to those communications [69-70]; however, although the plaintiffs did put certain privileged communications at issue by relying on the discovery rule to toll the statute of limitations, no blanket waiver of the privilege resulted, and this court vacated the judgment and portions of a discovery order so that a particularized assessment of the purportedly privileged communications could be made [70-72].

The common interest doctrine did not protect communications between the plaintiffs in a civil action in which they shared privileged information with each other, where one plaintiff was not represented by counsel at the time. [72]

The plaintiffs in a civil action failed to demonstrate that communications with their accountants were privileged because those accountants were necessary agents of their attorney. [72-73]

Civil action commenced in the Superior Court Department on July 15, 2016.

 A motion to compel the production of documents was heard by Rosalind H. Miller, J., and following consideration of a petition seeking relief from that order in the Appeals Court by Kinder, J., 

 Page 62 

a motion for sanctions was heard by Rosemary H. Connolly, J., and entry of judgment was ordered by her.

 R. Alan Fryer for the plaintiffs.

 Tory A. Weigand for the defendant.

 WOLOHOJIAN, J. This case comes to us after a judgment entered dismissing the plaintiffs' claims, with prejudice, as a sanction for failing to comply with a discovery order requiring them to produce communications they had withheld from discovery on the ground that the communications were subject to the attorney-client privilege. The appeal raises four issues. [Note 3] First is whether, under Patel v. Martin, 481 Mass. 29 (2018), the plaintiffs are precluded from taking this appeal because they invited dismissal by refusing to comply with the discovery order and because they had previously petitioned, under G. L. c. 231, § 118, first par., for relief from a single justice of this court, who left the discovery order undisturbed. Second is whether the plaintiffs have waived any privilege by bringing this negligence action against Jeffrey Lee Allen, their mother's former attorney (Allen or defendant), or by relying on the discovery rule to avoid the statute of limitations. Third is whether communications between the plaintiffs, one of whom was not represented by counsel at the time, were protected by the common interest doctrine. Fourth is whether the plaintiffs established that communications with accountants were protected by the attorney-client privilege.

 We conclude that the plaintiffs were entitled to invite dismissal of their claims as a sanction in order to obtain appellate review of the discovery order, and that the single justice's interlocutory review of the discovery order did not foreclose this appeal. We also conclude that, although the plaintiffs did not put their privileged communications "at issue" by bringing their claims against the defendant, they did put the privilege "at issue" by relying on the discovery rule to toll the statute of limitations. However, this does not result in a blanket waiver of the privilege, and we 

 Page 63 

therefore vacate the judgment and portions of the discovery order and remand the case so that a particularized assessment of the purportedly privileged communications may be made. As to the plaintiffs' reliance on the common interest doctrine, we agree with the motion judge [Note 4] that the plaintiffs failed to establish that they were entitled to the doctrine because they were not both represented by counsel when they shared privileged information with each other. Finally, we conclude that the plaintiffs failed to establish that their accountants were necessary agents of their attorney, and thus they failed to establish that communications with those accountants were entitled to protection as attorney-client communications. Accordingly, we affirm the judge's ruling that communications withheld on the basis of the common interest doctrine should be produced, as well as the judge's similar ruling with respect to communications with the accountants. However, we vacate the remainder of the discovery order and remand for further proceedings.

 Background. The plaintiffs commenced the underlying suit on July 15, 2016. After several years of litigation, which we do not describe because they have no bearing on the issues raised in this appeal, the plaintiffs filed a substituted second amended complaint (complaint) in 2019, alleging the following. The plaintiffs, Catherine Brauner (Catherine) and Susan Parker Brauner (Susan), are sisters. Their late mother, Phyllis Brauner (mother), in the years before her death in 2000, retained Allen to advise her on various matters pertaining to her assets and estate. After the mother died, Allen acted as executor of the mother's estate and as trustee of trusts she had created. The plaintiffs allege that Allen committed a breach of his fiduciary duty both to their mother (in his capacity as her lawyer and as trustee) and to them (in his capacity as trustee). Among other things, they allege that Allen misadvised the mother to create two trusts and to take out various secured loans, that his advice that the mother transfer title to her residence to herself individually was unwise, that he mischaracterized a gift to Susan as a loan, that he should have placed insurance proceeds into one of the trusts, that he failed to invest trust assets prudently, that he failed to provide an accounting to Susan and Catherine, that he failed to return or account for funds 

 Page 64 

Susan entrusted to him, that he failed to provide Susan funds in 2007 to help her avoid foreclosure on real estate she owned, and that he charged excessive fees for his services.

 Based on these allegations, the complaint asserted claims for breach of fiduciary duty, negligence, unjust enrichment, declaratory judgment, and violation of G. L. c. 93A. With the exception of the c. 93A claim, which is subject to the four-year limitations period of G. L. c. 260, § 5A, the remaining claims sounded in tort and are subject to the three-year limitations period of G. L. c. 260, § 2A. [Note 5] Thus, to be timely, the tort-based claims must have accrued no earlier than July 15, 2013, and the c. 93 claim must have accrued no earlier than July 15, 2012. The last date on which any act asserted in the complaint is alleged to have occurred is 2007 -- nine years before the filing of the suit. The mother died in 2000, sixteen years before suit was filed; Allen died in July 2015, one year before the suit was filed.

 From the start of the litigation, the defendant has asserted that the claims are time-barred. In discovery, the plaintiffs amplified the allegations of the complaint, claiming that Allen's negligence continued until his death in 2015, and that they had no way of discovering it earlier. To counteract the idea that the claims could not have been discovered earlier, the defendant pointed to the fact that the plaintiffs had -- over a period of years -- consulted with more than twenty different attorneys, as well as several accountants, concerning the topics contained in their complaint. For example, by February 2006, the plaintiffs had retained counsel to remove Allen as trustee for his alleged shortcomings, including his supposed failure to provide Susan with funds to avoid foreclosure. Then, in 2007, the plaintiffs retained Attorney H. Crowell Freeman, Jr., whom Susan contacted because she was concerned about Allen's conduct as trustee. Specifically, Susan wanted an accounting, she was concerned about Allen's fees, and she was concerned about the use and size of a margin account. In 2008, Freeman initiated a proceeding in the Probate and Family Court seeking an accounting, which the plaintiffs then received. In the context of the probate court action, Freeman (on behalf of the plaintiffs) raised questions about numerous aspects of Allen's performance as trustee and executor, including the distribution of the mother's assets between the plaintiffs, the handling of proceeds 

 Page 65 

from the sale of a property, the distribution of the residue of the mother's estate, the handling of various bank and investment accounts, and the absence of annual accountings for one of the trusts.

 When deposed, Susan took the position that attorney-client communications formed the bases for the complaint's allegations that Allen failed to invest monies prudently, failed to diversify investments, and imprudently used a margin account. On the instruction of counsel, Susan refused to disclose those communications and disclaimed independent recollection of the bases for those factual allegations of the complaint.

 The plaintiffs also refused to produce documents that they contended were protected by the attorney-client privilege. The documents all postdate the mother's death in 2000, with the vast majority dating from the period of 2005 to 2008, when the plaintiffs had retained Freeman and another attorney to look into Allen's activities. It was also the period during which the plaintiffs claim that Allen breached his duties to them as trustee of the mother's trusts.

 The defendant moved to compel production of the withheld documents on three grounds. First, he argued that the plaintiffs waived any privilege by putting the documents "at issue" by relying on the discovery rule to avoid the statute of limitations. Second, he argued that the privilege log was so deficient in detail that the plaintiffs had failed to establish that any of the documents were privileged. [Note 6] Finally, he argued that even the limited information on the log showed that many documents were not entitled to protection as attorney-client communications. For example, he argued that communications between the two plaintiffs were not shielded by the attorney-client privilege, nor were communications between Susan and her accountants.

 The plaintiffs argued that the privilege log was sufficiently detailed, that they had not placed the communications "at issue," that communications between them sharing legal advice were 

 Page 66 

subject to the common interest doctrine, and that Susan's communications with accountants were privileged because the accountants were assisting her lawyer.

 After a hearing and extensive briefing, the motion judge allowed in part the motion to compel. In a detailed and thoughtful memorandum, the judge explained that, as presented to her, there were four categories of communications that the plaintiffs sought to withhold: (1) communications between the two plaintiffs regarding legal advice they had individually received; (2) communications between either plaintiff and a hired attorney; (3) communications between either plaintiff and an attorney who was not hired; and (4) communications between either plaintiff and a so-called agent (accountant) of an attorney. As to the first category, the judge ruled that each plaintiff had waived any privilege she had in any particular communication with her own attorney when she shared that communication with the other plaintiff. The judge further concluded that the plaintiffs did not meet the requirements of the common interest doctrine because only one of the sisters was represented by counsel at the time the disclosures were made.

 As to the second and third categories of documents, the motion judge concluded that the plaintiffs' communications with lawyers (both hired and not hired) seeking legal advice about issues relating to Allen's alleged malpractice were subject to the attorney-client privilege. But she found that the plaintiffs had waived the privilege by putting "at issue" their communications with counsel concerning Allen's alleged fiduciary failures as trustee after the mother's death. On this basis, the judge ordered the production of documents pertaining to the probate court proceeding in 2008 seeking an accounting, and Susan's communications with counsel concerning foreclosures on two properties she alleged were caused by Allen's failure to provide her with funds. Part of the judge's reasoning with respect to both of these categories of documents was that they related to specific allegations of the complaint and were contemporaneous with the facts alleged. By contrast, the judge concluded that the plaintiffs had not put "at issue" their communications with counsel regarding Allen's alleged malpractice as to the mother's estate. The judge reasoned that those attorney-client communications occurred after Allen's alleged malpractice and, therefore, they were not put "at issue" by the filing of the complaint. The judge also concluded that two additional categories of attorney-client communications 

 Page 67 

had not been put "at issue" because the complaint made no allegations against Allen concerning them. These were communications regarding Susan's bankruptcy and communications regarding lender liability claims concerning Susan's property in Harwich Port. Finally, the judge also concluded that the plaintiffs had not put their attorney-client communications "at issue" by asserting the discovery rule in defense to the statute of limitations.

 As to the fourth category of documents, the motion judge concluded that she need not decide whether communications with accountants were protected as attorney-client communications because she had concluded that the plaintiffs had waived the privilege as to those documents by putting them "at issue."

 On these bases, the motion judge allowed in part and denied in part the defendant's motion to compel. The plaintiffs then filed a petition pursuant to G. L. c. 231, § 118, first par., seeking single justice review. A single justice of this court denied the petition on the ground that the judge's order demonstrated neither a clear error of law nor an abuse of discretion. [Note 7] Unsatisfied with this decision, the plaintiffs filed a motion, pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), asking the judge to report the question of "at issue" waiver to the Appeals Court for consideration by a panel. [Note 8]

 After the motion judge declined to report the issue, the plaintiffs then decided to obtain appellate review by inviting dismissal of their claims as a sanction for their continuing refusal to comply with the discovery order. This in fact happened, and it is through this route that the appeal is now before us.

 Discussion. As a preliminary matter, we address the defendant's argument that the plaintiffs have waived any appellate relief by deliberately inviting dismissal of their claims. In the defendant's view, Patel, 481 Mass. at 29-30, stands for the proposition that once the single justice denied interlocutory relief from the discovery order, the plaintiffs were required to comply with the order so that the case could proceed through the ordinary litigation process until it reached judgment. Because the plaintiffs instead chose to continue to refuse to comply with the discovery 

 Page 68 

order and to invite dismissal of their claims, then, in the defendant's view, the plaintiffs have waived any appellate review or relief.

 We do not agree with this reading of Patel. In Patel, the defendants sought interlocutory review of a discovery order requiring production of documents they contended were subject to attorney-client privilege. See Patel, 481 Mass. at 30. To obtain immediate appellate review, the defendants relied on the doctrine of present execution, arguing that postjudgment appellate review would be inadequate because the purportedly privileged documents would have already been produced. See id. at 34. Although the court recognized that a postjudgment appeal might be an imperfect remedy, the court saw it nonetheless as a viable one, and held that "orders requiring the disclosure of privileged material, such as the order in this case, are not categorically irremediable, and therefore are not appealable under the doctrine of present execution." Id. at 36. In the context of explaining why the doctrine of present execution was not available, the court set out other potential avenues of immediate appellate review in cases where "the legal questions at issue regarding a discovery order are so significant or novel that they warrant interlocutory appeal." Id. at 37. One is to request that the trial court report the question to the Appeals Court, pursuant to Mass. R. Civ. P. 64. See id. at 37-38. Another is to file a petition with the single justice of the Appeals Court under G. L. c. 231, § 118, first par. See id. at 38. The third is to continue to refuse to comply with the discovery order and to appeal from the resulting order of dismissal or contempt. See id.

 Although it is true, as the defendant points out, that the court characterized these as alternative remedies, it does not follow that they are mutually exclusive. In other words, we do not read Patel to say or imply that if (as the plaintiffs did here) a party first seeks single justice review, the party is then foreclosed from pursuing appellate review by a full panel of this court after judgment. Indeed, since a party cannot ordinarily appeal a single justice's denial of a G. L. c. 231, § 118, first par., petition to a panel of the Appeals Court, it only makes sense that the underlying discovery order would be subject to full panel review in a postjudgment appeal. See Nystedt v. Munroe, 452 Mass. 1003, 1004 (2008); McMenimen v. Passatempo, 452 Mass. 178, 191 (2008). To hold otherwise would effectively substitute a single justice's limited review under c. 231, § 118, first par., for clear error of law or 

 Page 69 

other abuse of discretion, see Aspinall v. Philip Morris Co., 442 Mass. 381, 390 (2004), for full panel review of the underlying order, as well as any further review by the Supreme Judicial Court.

 We turn now to the substance of the issues the parties raise on appeal concerning the discovery order. "As a general matter, [we] uphold[] discovery rulings unless the appellant can demonstrate an abuse of discretion that resulted in prejudicial error. However, [m]ixed questions of law and fact, such as whether there has been a waiver, generally receive de novo review." (Quotations and citations omitted.) McCarthy v. Slade Assocs., Inc., 463 Mass. 181, 190 (2012).

 1. "At issue" waiver of privilege. The plaintiffs argue that the judge erred in concluding that they had put at issue their attorney-client privileged communications concerning topics alleged in the complaint, thus waiving any privilege. The defendant argues that not only did the plaintiffs waive the privilege by putting their communications "at issue" by the filing of the complaint, but that they also effectuated an "at issue" waiver by asserting the discovery rule to avoid the running of the statute of limitations.

 In Darius v. Boston, 433 Mass. 274, 277 (2001), the Supreme Judicial Court accepted, "as a general principle, that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case." The scope of an "at issue" waiver "is not to be viewed too broadly." Clair v. Clair, 464 Mass. 205, 219 (2013). "By definition, it is a limited waiver of the privilege with respect to what has been put 'at issue.'" Id. "An 'at issue' waiver, in circumstances where it is recognized, should not be tantamount to a blanket waiver of the entire attorney-client privilege in the case." Darius, supra at 283. In order to find an "at issue" waiver, the party seeking the disclosure must show that the information is unavailable from any other source. See Clair, supra; Darius, supra at 284.

 There is no set test for determining whether privileged communications have been put "at issue" in a particular case. Privileged communications may be put "at issue" where reliance on the advice of counsel is directly or indirectly implicated in the party's claims, Darius, 433 Mass. at 280 n.7, or where the claim otherwise "depends" on the content of the privileged communication, Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 819 (2010). Privileged communications may also be put "at issue" where "a client sues a 

 Page 70 

former attorney for malpractice, [and the privileged communications were with] attorneys involved in the underlying litigation in which the malpractice allegedly occurred." Zabin v. Picciotto, 73 Mass. App. Ct. 141, 157-158 (2008). Although a statute of limitations defense, "by itself, does not permit the defendant to intrude into the attorney-client relationship between the plaintiff and her lawyer only to locate a statement by the client that might contradict a statement or position that she has taken in the particular case," privileged communications may be put "at issue" "where a statute of limitations defense is met by the plaintiff's reliance on the discovery rule." McCarthy, 463 Mass. at 191-192. These examples demonstrate that the underlying principle behind "at issue" waiver is that a party may not press a claim or defense to which privileged communications are integral while simultaneously refusing to produce those communications if they are unavailable from other sources. In other words, the doctrine is related to the long-standing principle that the attorney-client privilege cannot be both a shield and a sword. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 412 (2016).

 With these principles in mind, we turn to the case at hand. As we have already stated, the plaintiffs allege that Allen committed a breach of his responsibilities to their mother in his handling of her legal affairs while she was alive, and to them while he was acting as trustee after the mother's death. These professional liability claims against Allen do not depend on communications the plaintiffs had with attorneys they hired or consulted to look into and evaluate Allen's performance. The claims against Allen rise and fall on what he did, or did not, do; they do not depend on legal advice from the lawyers the plaintiffs hired to look into Allen's performance. This is not a situation like the one in Zabin, 73 Mass. App. Ct. at 157-158, where the lawyers had all been involved in handling the same underlying litigation. Accordingly, the plaintiffs did not place "at issue" their attorney-client communications with other lawyers simply by asserting claims against Allen.

 By contrast, the plaintiffs' reliance on the discovery rule to toll the statute of limitations did place "at issue" privileged communications to the limited extent they bear on the question of when the plaintiffs discovered, or reasonably should have discovered, that they had been harmed or may have been harmed by Allen's conduct. See Koe v. Mercer, 450 Mass. 97, 101 (2007). "A plaintiff 

 Page 71 

who invokes the discovery rule by claiming that her delay in filing suit stems from a failure to recognize the cause of her injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." Doe v. Creighton, 439 Mass. 281, 283 (2003). See Magliacane v. Gardner, 483 Mass. 842, 851 (2020). Thus, to the extent privileged communications implicate the extent and timing of what the plaintiffs knew or should have known before July 15, 2013 (the earliest date on which the claims could have accrued to be timely), they were put "at issue" by the plaintiffs' reliance on the discovery rule. See Darius, 433 Mass. at 279-280. The defendant has sufficiently established that the information is not otherwise reasonably available given the plaintiffs' professed lack of recollection of what they knew -- and when -- without reference to the privileged documents.

 This is not to say that the plaintiffs have effectuated a blanket waiver of all privileged communications before July 15, 2013. Instead, they have waived the privilege only as to those documents that directly bear on what the plaintiffs knew -- and when -- about the claims they now bring against Allen. We cannot make this particularized assessment of the documents ourselves. As noted above, the privilege log is fairly cursory. Most important for these purposes, the log's description of the subject matter of each withheld document is insufficient to determine whether any particular document contains information bearing on the extent of the plaintiffs' knowledge of their potential claims against Allen as of the date of the document. For this reason, a remand is necessary for the judge to consider how best to craft a procedure to determine which of the documents have been put in play by the plaintiffs' reliance on the discovery rule. It may be that only some of the privileged communications bear on when the plaintiffs discovered, or reasonably should have discovered, that they had been harmed by Allen. Or it may be that all -- or none -- of them do. On remand, the judge may decide that the plaintiffs must produce a more detailed privilege log, or that the documents should be submitted for in camera review, or that the documents should be produced under an appropriate protective order, or that there are other mechanisms that will aid in a particularized assessment of the documents. We leave these matters to the judge, who will be in the best position to arrive at the most effective way to determine which of the privileged communications have been put "at issue" by reliance on the discovery rule such that the 

 Page 72 

privilege has been waived.

 2. Common interest doctrine. The plaintiffs assert that they did not waive the attorney-client privilege by sharing privileged documents between themselves, because the disclosure was subject to the common interest doctrine. "The common interest doctrine does not create a new or separate privilege, but prevents waiver of the attorney-client privilege when otherwise privileged communications are disclosed to and shared, in confidence, with an attorney for a third person having a common legal interest for the purpose of rendering legal advice to the client." Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 614 (2007). See Restatement (Third) of the Law Governing Lawyers § 76(1) (2000).

 "The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege. This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including (1) the communications were received from a client during the course of the client's search for legal advice from the attorney in his or her capacity as such; (2) the communications were made in confidence; and (3) the privilege as to these communications has not been waived." (Citation omitted.) Matter of the Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421 (1997). Here, the plaintiffs failed to meet that burden with respect to communications between themselves because the plaintiffs were not each represented by counsel at the time. Instead, one plaintiff was represented while the other was not. The common interest doctrine protects communications between represented clients who share a common interest; it does not extend to communications between a represented client and an unrepresented third party who simply may have, in a colloquial, practical, or financial sense, a common interest with the disclosing party.

 3. Waiver of privilege by disclosure to accountants. The plaintiffs contend that communications with their accountants are privileged because the accountants were necessary agents of their attorney. It was the plaintiffs' burden to establish that these communications fell within the narrow exception explained in Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 307 (2009): "If the accountant's presence is 'necessary' for the 'effective consultation' between client and attorney, the privilege 

 Page 73 

attaches. . . . The 'necessity' element means more than 'just useful and convenient.' The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." (Quotations and citations omitted.) The "doctrine applies only when the accountant's role is to clarify or facilitate communications between attorney and client." Id. at 308. The plaintiffs made no such showing here. There were, for example, no affidavits from the plaintiffs or their attorneys stating that the accountants had been retained by the attorneys, or were present at the attorneys' request, or that the attorneys required the accountants' assistance for purposes of rendering legal (as opposed to accounting) advice.

 Conclusion. The judgment is vacated. The discovery order entered on February 12, 2020, requiring the plaintiffs to produce documents withheld on the ground of attorney-client privilege is affirmed to the extent it requires disclosure of (1) communications disclosed by one plaintiff to the other and (2) communications to or from accountants. The discovery order is otherwise vacated, and the case is remanded for further proceedings. [Note 9]

So ordered.

FOOTNOTES
[Note 1] Susan Parker Brauner. 

[Note 2] Of the estate of Jeffrey Lee Allen. 

[Note 3] The plaintiffs also argue that the same judge who issued the discovery order abused her discretion in denying their motion for sanctions against the defendant's counsel, whom the plaintiffs contend violated Mass. R. Civ. P. 26 (b) (5) (B), as appearing in 466 Mass. 1402 (2013), by failing to return what they claim was an inadvertently-produced privileged document. After carefully reviewing the record, and the judge's reasoning in declining to impose such sanctions, we conclude that the plaintiffs have failed to show that the judge made "a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). 

[Note 4] The judge who issued the discovery order was not the judge who heard the motion for sanctions and issued the judgment dismissing the complaint. Unless otherwise noted, all references herein to "the judge" and "the motion judge" are to the judge who issued the discovery order. 

[Note 5] The declaratory judgment claim was based on only a single statement that it incorporated the assertions supporting the tort claims. 

[Note 6] The defendant repeats this argument on appeal. The documents were identified in a fourteen-page privilege log that gave basic information (date, sender, recipient, type of document, and brief description of subject matter). Although the descriptions are brief, we cannot say that they are wholly inadequate such that the defendant was entitled to the wholesale production of the withheld documents. The record does not show that the defendant sought to compel production of a more detailed log, or sought to obtain additional information about any particular document on the log either through an informal request to the plaintiffs' counsel or otherwise. 

[Note 7] The single justice also perceived no abuse of discretion in the judge's order denying the plaintiffs' request for sanctions, see note 3, supra. 

[Note 8] The plaintiffs also filed a notice of appeal seeking interlocutory review by a panel of this court under the doctrine of present execution, which they later withdrew. 

[Note 9] The defendant's request for attorney's fees and costs is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.