APPEALS COURT 
 
 SUSANNAH KAY & another[1] vs. TOWN OF CONCORD

 
 Docket:
 23-P-1271
 
 
 Dates:
 September 9, 2024 – March 28, 2025
 
 
 Present:
 Blake, Walsh, & Hodgens, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Public Records. Open Meeting Law. Privileged Communication. Municipal Corporations, Public record, Town counsel, Outside legal counsel, Officers and agents, Open meetings. Attorney at Law, Attorney-client relationship, Work product.
 
 

       Civil actions commenced in the Superior Court Department on March 18, 2022, and May 24, 2022.
     After consolidation, the case was heard by Joshua I. Wall, J., on motions for summary judgment.
     Robert Nislick for the plaintiffs.
     Austin P. Anderson for the defendant.
     Denise English Haartz, Ellen Emerson, Pierce B. Browne, Eleanor Bemis, & Lansing Old, pro se, amici curiae, submitted a brief.
     WALSH, J.  The plaintiffs, Susannah Kay and Brooks S. Read (collectively, the Read-Kays), filed a complaint in the Superior Court against the town of Concord (town) under the Massachusetts public records law, G. L. c. 66, § 10, seeking unredacted versions of fourteen e-mail messages (e-mails) sent between the town manager, members of the town select board, and two town employees.  The town refused, citing the attorney-client privilege and, in one instance, the work product doctrine.  At the parties' joint request, a judge reviewed the e‑mails in camera.  He agreed with the town and found that the redacted portions of the e-mails were protected by the attorney-client privilege and, as to one e-mail, the work product doctrine.  On cross motions for summary judgment, the judge allowed the town's motion, denied the plaintiffs' motion, and entered judgment for the town.  The Read-Kays have appealed and contend that the judge erred in finding that the e-mails were protected by the attorney-client privilege and work product doctrine, respectively.  They also argue that, even if a privilege exists, the Massachusetts open meeting law, G. L. c. 30A, §§ 18–25, operates as an automatic waiver of the privilege.  We affirm in part and reverse in part.
     Background.  This action follows a lawsuit filed in the Land Court (2017 action) in which the town sued a group of individuals, including the Read-Kays, seeking to settle the property rights to an unpaved path known as Estabrook Trail (trail).  The Read-Kays own property abutting the trail, which had been used by the public to access the publicly owned portions of Estabrook Woods.  By 2016, problems with the public's use of the trail became a concern to abutting property owners.  Various incidents occurred, including trail users yelling at property owners and, on one occasion, off-leash dogs causing a rider to fall from her horse.  As a result, in early 2016, the town sought a legal opinion from town counsel regarding public access to the trail.  In 2017, landowners abutting the trail erected a gate at the entrance, asserting that they had the right to prohibit the public from accessing the trail.  The town requested that the property owners remove the gate, and, when they refused to do so, filed the 2017 action.
     The fourteen e-mails at issue (dated March 29, 2016, through November 16, 2017) were first produced in discovery with redactions in connection with the 2017 action.[2]  Generally, the e-mails concern the ongoing controversy regarding the trail.  The Land Court judge ultimately found that the trail was a public way and entered a judgment in favor of the town.  That judgment was affirmed.  See Concord v. Rasmussen, 104 Mass. App. Ct. 831, 843 (2024), further appellate review granted, 495 Mass. 1104 (2025).
     In 2019, while the 2017 action was pending, the Read-Kays filed a complaint with the division of open government of the office of the Attorney General alleging that some of the e-mails produced in discovery showed that the town violated the open meeting law, G. L. c. 30A, §§ 18–25.  The Attorney General concluded that the select board had engaged in improper deliberations in four of the e-mails at issue in this case.  She ordered the town to release the e-mails to the public but did not address the redactions.[3]
     Still desiring to access the unredacted e-mails, the Read-Kays filed a public records request with the town clerk pursuant to G. L. c. 66, § 10.  In response, the town released a single redacted e-mail which had been omitted from the original discovery response.  The town maintained its position that the redacted portions of the e-mails were protected by the attorney-client privilege and the work product doctrine.  This litigation followed.
     Discussion.  As to thirteen of the contested e-mails, the key issue is whether the attorney-client privilege applies to communications among the town manager and select board members where no attorney is involved.  The Read-Kays' theory is straightforward -- the absence of an attorney in the communication renders the privilege inapplicable.  They contend that communications solely between members of the select board and the town manager are per se unprivileged regardless of the nature of the communications.  Next, the Read-Kays argue that the open meeting law, which applies to only four of the e-mails at issue, operates as a statutory waiver of the privilege.  Finally, they assert that the single contested e-mail between members of the town's public works department is not protected under the work product doctrine.  We address each issue in turn.
     1.  Standard of review.  We review a grant of summary judgment de novo.  See Metcalf v. BSC Group, Inc., 492 Mass. 676, 680 (2023).  We determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  "A party asserting the attorney-client privilege (or protected work product) has the burden to show that the privilege applies."  Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 619 (2007) (Hanover Ins.).  We do not accord the judge's factual findings any special deference where, as here, they are based solely on documentary evidence.  See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 302 (2009) (Comcast).
     2.  The attorney-client privilege.  The traditional formulation of the attorney-client privilege protects "all confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice."  Attorney Gen. v. Facebook, Inc., 487 Mass. 109, 121 (2021) (Facebook), quoting Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 448 (2007) (Suffolk Constr.).  The privilege exists because we are governed by laws "so numerous and complex" that people require the advice of attorneys, "both in ascertaining their rights in the country, and maintaining them most safely in courts."  Hanover Ins., 449 Mass. at 615, quoting Hatton v. Robinson, 31 Mass. 416, 422 (1833).  The attorney-client privilege flows in both directions and "enable[s] clients to make full disclosure to legal counsel of all relevant facts," which allows counsel to "render fully informed legal advice."  Comcast, 453 Mass. at 303, quoting Suffolk Constr., supra at 449.  The attorney-client privilege is so fundamental to our justice system that the "social good derived from the proper performance of the functions of lawyers acting for their clients . . . outweigh[s] the harm that may come from the suppression of the evidence" (alteration in original).  Hanover Ins., supra at 615-616, quoting Commonwealth v. Goldman, 395 Mass. 495, 502, cert. denied, 474 U.S. 906 (1985).
     Government entities may also assert the attorney-client privilege, despite the tension with the principle of government transparency embodied by the Massachusetts public records law.  See G. L. c. 4, § 7, Twenty-sixth (broadly defining "public records"); G. L. c. 66, § 10 (ensuring public access to government records and promoting accountability).  See also Suffolk Constr., 449 Mass. at 446 ("Nothing . . . leads us to conclude that the Legislature intended the public records law to abrogate the privilege for those subject to the statute").  A contrary interpretation would create an obstacle to government officials obtaining the legal advice they need to carry out their duties and would also "place public entities at an unfair disadvantage vis-à-vis private parties."  Id.  Since the town can generally avail itself of the attorney-client privilege, we must determine if the privilege applies to the contested e-mails.
     3.  The attorney-client privilege in communications with nonattorneys.  The Read-Kays cite no authority, nor have we found any, supporting the proposition that communications not directly including an attorney are per se unprotected by the attorney-client privilege.  In fact, our case law indicates the opposite.  The Supreme Judicial Court in Hanover Insurance recognized the common interest doctrine, in which communications shared with another represented party's counsel for the purpose of furthering a common legal interest are protected by the attorney-client privilege.  Hanover Ins., 449 Mass. at 612.  The court defined the doctrine to encompass communications between two clients where no attorney is included.  Id. at 614, quoting Restatement (Third) of the Law Governing Lawyers § 76(1) (2000).  While Hanover Insurance addressed communications that did include an attorney, we have held that communications directly between clients are also protected.  See Brauner v. Valley, 101 Mass. App. Ct. 61, 72 (2022) ("The common interest doctrine protects communications between represented clients who share a common interest").[4]  The per se rule the Read-Kays advocate for would undermine this facet of the common interest doctrine and jeopardize the application of the attorney-client privilege to communications that we have already deemed privileged.  See generally Mass. G. Evid. § 502 (2024).  A per se rule, taken to its logical extreme, would also require disclosure in situations where an attorney was inadvertently excluded from a communication that was otherwise privileged or where an assistant relayed the attorney's advice to a client.  Legal advice given directly to a group of clients would be protected, but if one client relayed that advice to other co-clients, the protection would not apply.  Making the attorney-client privilege contingent on such technicalities would undermine its purpose -- enabling "clients to make full disclosure to legal counsel of all relevant facts."  Comcast, 453 Mass. at 303, quoting Suffolk Constr., 449 Mass. at 449.  We decline to adopt such a rule, which is without support in our case law and conflicts with other applications of the attorney-client privilege.
     As for the application of the attorney-client privilege here, we observe that the privilege attaches not only to communications between the client and the client's attorney, but also to communications "between representatives of the client" that are "made for the purpose of obtaining . . . legal services."  See Mass. G. Evid. § 502(b)(4) (2024).[5]  "A 'client' is a . . . corporation, association, or other entity, either public or private" that consults or receives services from an attorney.  See id. § 502(a)(1).  See Matter of a Grand Jury Investigation, 437 Mass. 340, 351 (2002) (recognizing attorney-client privilege exists for non-person client).  A representative "may include the client's agent or employee."  Id. § 502(a)(2).  See Ellingsgard v. Silver, 352 Mass. 34, 40 (1967) ("The attorney-client privilege may extend to communications from the client's agent or employee to the attorney").  The Read-Kays do not dispute either that the town is a client or that the town manager and members of the select board are agents of the town.  As "officers of government," accountable to the people of the town, they are the town's agents.  See art. 5 of the Declaration of Rights of the Massachusetts Constitution.  As agents, they fall within the definition of "representative."  See Mass. G. Evid. § 502(a)(2) (2024).  Accordingly, when the town manager and members of the select board communicate amongst themselves for the purpose of obtaining legal services, we conclude that those communications may be protected by the attorney-client privilege.
     In Comcast, the Supreme Judicial Court set out the elements of the attorney-client privilege by endorsing the "classic formulation of the attorney-client privilege":
"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."
453 Mass. at 303, quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961).  Often, "communications relating to [the] purpose" of seeking legal advice are between a single client and an attorney.  Id., quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961).  But in the context of an organizational client like a town, much like that of a corporate client, some of these communications will necessarily be outside of direct communication with counsel.  Organizational clients are entities like towns and corporations that "can act only through [their] agents."  Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 135 (2006).  Here, when the town is involved in litigation, its town manager interfaces with town counsel, and litigation decisions are subject to the approval of the select board.  This means that, before the town (as the client) can seek advice from counsel, request litigation updates, or engage in any typical attorney-client interactions, its agents must first confer to discuss the legal advice received or determine what further guidance is needed.  After receiving counsel's advice, town leaders often communicate about next steps for the litigation or whether additional legal advice is required.  These are all "communications relating to [the] purpose" of seeking legal advice and protected by the attorney-client privilege.  See Comcast, supra, quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961).  Accordingly, the absence of attorneys on either side of an otherwise privileged communication is not fatal to the town's claim of privilege.
     4.  The attorney-client privilege as applied to the contested e-mails.  While the attorney-client privilege can apply to communications between client representatives, a party asserting the privilege must still show that the specific communications to be withheld are privileged.  Here, we consider the lack of any lawyer involvement in any communication as a factor tending to weigh against the town in showing the privileged nature of that communication.  This is because we construe the attorney-client privilege narrowly.  See Clair v. Clair, 464 Mass. 205, 215 (2013).  In a municipal context, a narrow construction is vital because "[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner."  Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 158 (1979).  See Trustees of Boston Univ. v. Clerk-Magistrate of the Cambridge Div. of the Dist. Court Dep't, 495 Mass. 56, 60 (2024).
     Mindful of the narrow construction we must apply, we have carefully examined all thirteen[6] contested e-mails in camera to determine if each element of the attorney-client privilege is satisfied.  Of the eight elements outlined in Comcast, four elements (two, five, six, and seven) are apparent.  Further, there is no dispute that the communications were intended to be confidential, satisfying element four.  The only questions remaining are whether the substance of the e-mails relate to the purpose of seeking legal advice -- elements one and three -- and whether the town waived the privilege -- element eight.
     We start with the principle that not every communication between a client and an attorney is privileged and, similarly, not every communication between agents about the subject matter of a lawsuit is automatically privileged.  An essential element of the attorney-client privilege is a "confidential communication[] between a client and its attorney undertaken for the purpose of obtaining legal advice."  Suffolk Constr., 449 Mass. at 448.  Where a communication does not include an attorney, the ultimate standard for determining whether it was made for the purpose of obtaining legal advice is whether the communication revealed legal advice from, or the intent to request legal advice from, an attorney in some fashion.  With this in mind, we conclude that only four e-mails bear this essential element and are therefore privileged.[7]  As to these four e-mails that are protected by attorney-client privilege because they pertain to legal advice, they are generally unrevealing.  Mundane as the communications may be, they nevertheless were intended to be confidential and related to the town's ongoing litigation.  "[I]nformation contained within a communication need not itself be confidential for the communication to be deemed privileged; rather the communication must be made in confidence -- that is, with the expectation that the communication will not be divulged."  Comcast, 453 Mass. at 305.  At a high level of generality, the redacted portions of the four e-mails either indicate what kind of legal advice the town needs, relay advice from town counsel, or discuss clarifications needed from town counsel about that advice.  Because the communications relate to seeking legal advice, they are protected by the attorney-client privilege.
     These four e-mails are protected by the privilege because they show either an intent by select board members to communicate directly with an attorney representing the town or an intent by that attorney to communicate directly with the select board members.  Thus, the four e-mails are "necessary for effective communication between" board members and town counsel.  Comcast, 453 Mass. at 308.  See, e.g., Restatement (Third) of the Law Governing Lawyers § 70 (2000) (privilege may extend to "agents of either [attorney or client] who facilitate communications between them").  It is evident from the context of these e-mails that select board members and town counsel often communicated through the town manager.  In three of the four e-mails, select board members sought to convey confidential information through the town manager to town counsel.  In one of the four e-mails, town counsel sought to convey confidential information through the town manager to select board members.  Thus, protecting the disclosure of these four e-mails falls within the traditional concept of the attorney-client privilege.
     Furthermore, nothing in the contested redactions indicates there was any "bad faith" or attempts to "misuse the attorney-client privilege" on the town's part.  Suffolk Constr., 449 Mass. at 460.  There was no attempt to shield discoverable facts with the privilege by sending them to an attorney.  See Facebook, 487 Mass. at 124 ("a client may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney" [quotation and citation omitted]).  The redactions are limited in scope and relate only to litigation, as compared to the minutes of a nonlegal meeting at which an attorney happened to be present.  See Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1), 424 Mass. 430, 457 n.26 (1997) (Judge Rotenberg) (no privilege where meeting with counsel was "general policy meeting").
     As to the remaining nine e-mails, the town has failed to establish that these communications revealed legal advice from, or the intent to request legal advice from, an attorney in some fashion.  To the extent that these e-mails refer to the subject of the trail, which was also the subject of a prior legal opinion by town counsel, the attorney-client privilege "does not immunize underlying facts" from disclosure simply because town officials may have discussed the same facts with an attorney on a prior occasion.  Chambers v. Gold Medal Bakery, Inc., 464 Mass. 383, 392 (2013).  Therefore, consultation with town counsel on a particular subject does not convert all future discussions among town officials on the same subject into privileged, attorney-client communications.
     The town contends that the attorney-client privilege protects all e-mails that were composed "for the purpose of seeking or implementing legal advice" on the subject of the trail.  This formulation is broader than the rule we have articulated because e-mails that discuss the implementation of legal advice will often not reveal any of the underlying legal advice and thus are not entitled to automatic protection.  As our opinion makes clear, but bears repeating, prior consultation with town counsel on a particular subject does not magically cloak all future discussions among municipal officials on that same issue with the attorney-client privilege.
     The essence of the nine remaining disputed e-mails is mere deliberations and musings among town officials.  Such communications are not protected by the attorney-client privilege, even if town counsel is included.  See Suffolk Constr., 449 Mass. at 457 ("There is no 'deliberative process' subset of the attorney-client privilege"); Judge Rotenberg, 424 Mass. at 457 n.26 (attorney-client privilege inapplicable to general policy meeting even though counsel was present).  Strictly construed, the privilege does not guard a person's expressed thoughts, contemplations, and ruminations come what may; instead, the privilege protects a specific class of communications only when a person seeks the superior knowledge and skill of an attorney in an effort "to obtain a more exact and complete knowledge of the law, affecting [the person's] rights, obligations or duties."  Foster v. Hall, 29 Mass. 89, 101 (1831).[8]
     In sum, the remaining nine disputed e-mails are not communications about obtaining or disseminating legal advice given by town counsel but rather are simply discussions among town officials about what to do with the trail.  Such communications are not protected by the attorney-client privilege as they are not made for the purpose of obtaining legal advice.  Further, disclosure of these e-mails exchanged among town officials will have no impact on the full and frank discussions with counsel, the quality of counsel's advice to town officials, the confidentiality of communications between counsel and town officials, or the "broader public interests in the observance of law and administration of justice" as embodied in the attorney-client privilege.  Comcast, 453 Mass. at 303, quoting Suffolk Constr., 449 Mass. at 448.
     5.  Waiver.  The Read-Kays argue that the Massachusetts open meeting law operates as a "statutory public waiver" of the attorney-client privilege, relying on District Attorney for the Plymouth Dist. v. Selectmen of Middleborough, 395 Mass. 629, 634 (1985) (Middleborough).  In that case, a town stipulated that it entered into executive session for an impermissible purpose.  Id. at 630.  Nevertheless, the town asked the court to read a blanket exception into the open meeting law to allow it to enter executive session any time the board met with counsel.  Id. at 630-631.  The court declined to do so, reasoning that when a town discusses a topic with an attorney that they acknowledge should be public under the open meeting law, the attorney-client privilege is waived.  See id.  In Suffolk Construction, the Supreme Judicial Court cabined Middleborough to its facts, indicating that the version of the open meeting law then in effect, G. L. c. 39, §§ 23A-23C, did not abrogate the attorney-client privilege.[9]  See Suffolk Constr., 449 Mass. at 459 n.20.
     Furthermore, the open meeting law at issue in Middleborough, G. L. c. 39, §§ 23A-23C, was repealed and replaced, effective July 1, 2010, with G. L. c. 30A, §§ 18-25.  Enacted three years after Suffolk Construction affirmed the application of the attorney-client privilege to public entities, the current open meeting law contains no language indicating that it operates as a statutory waiver of the privilege.  In fact, the new statute contains additional provisions to ensure that the privilege protects entities like the town.[10]  See G. L. c. 30A, §§ 23 (f), 24 (e).  By enacting a new open meeting law, the Legislature strengthened the privilege rather than making it "unmistakably clear" that it intended to divest towns "of a privilege as basic and important as the attorney-client privilege."  Suffolk Constr., 449 Mass. at 461.
     6.  The work product doctrine.  Opinion work product made "in anticipation of or during the pendency of litigation" is protected from public-record disclosure by exemption G. L. c. 4, § 7, Twenty-sixth (d).  DaRosa v. New Bedford, 471 Mass. 446, 459 (2015).  Opinion work product that would be protected from discovery by Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974), is also protected from a public records request.  DaRosa, supra.  Opinion work product is defined as "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Mass. R. Civ. P. 26 (b) (3).  The Read-Kays argue that the work product doctrine does not apply to the single e-mail sent between employees of the town's public works department because it is not opinion work product.[11]  We are not persuaded.  Here, the e-mail in question refers to information collected by a town employee at the request of town counsel.  The e-mail reveals town counsel's mental impressions -- it shows what counsel thought was important, and what information would be necessary or useful for litigating the case.  Because the work product doctrine applies to the contested e-mail, the judge properly held that the town was not required to produce it.[12]
     Conclusion.  For the foregoing reasons, we affirm the summary judgment entered against the plaintiffs on their public records law claim to the extent it was based on the portion of the May 26, 2016 e-mail from Jane Hotchkiss to Michael Lawson, and the e-mails dated March 29, 2016; August 1, 2016; May 11, 2017; and December 12, 2017.  As to the remaining e-mails, and the portion of the May 26, 2016 e-mail from Michael Lawson to Chris Whelan, the entry of summary judgment against the plaintiffs is reversed and the case is remanded for judgment to enter consistent with this opinion.
So ordered.
     HODGENS, J. (concurring).  I join today's opinion because it carefully balances the competing interests of the public records law and the attorney-client privilege.  On the one hand, genuine public participation in democratic institutions requires broad access to information in the possession of the government.  On the other hand, government officials must have the ability to obtain confidential legal advice essential to the discharge of their duties.  I write separately regarding the attorney-client privilege to emphasize that the narrow holding in this case applies the privilege but does not expand it or create some kind of special municipal subset.
     Information is the lifeblood of democracy.  "It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached."  Foudy v. Amherst-Pelham Regional Sch. Comm., 402 Mass. 179, 184 (1988).  "[E]very citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."  Trustees of Boston Univ. v. Clerk-Magistrate of the Cambridge Div. of the Dist. Court Dep't, 495 Mass. 56, 67 (2024), quoting Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 657 (2007).  Access to information about actions of public officials is increasingly "an essential ingredient of public confidence in government."  Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 263 (2020), quoting New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 417 (1979) (Abrams, J., concurring).  See, e.g., G. L. c. 30A, § 20 (a) (generally meetings of public bodies "shall be open to the public"); G. L. c. 66, § 10A (d) (1) (iv) ("presumption shall exist [in civil enforcement action] that each record sought is public").  "The public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner."  Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 158 (1979). Lack of transparency, especially at the municipal level, increases suspicion, inhibits public participation, and undermines confidence in the government.
     Access to information, however, must not impair the ability of government officials to obtain quality legal advice.  Public employees must be able to routinely seek confidential legal advice "without inhibitions arising from the fear that what they communicate [to counsel] will be disclosed to the world."  Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 450 (2007).  For similar reasons, counsel for a public entity must not labor under the constant dread that communications conveying confidential legal advice will make their way into the public view.  Otherwise, "counsel will be less likely to perform adequately the functions of a lawyer."  Id.  Indeed, "an attorney does not become any less of an attorney by virtue of [government] employment" (citation omitted).  Id. at 451 n.11.  Therefore, it is beyond cavil that a robust attorney-client privilege has equivalent vitality in the public or private realm.
     The town of Concord (town) predicts that if the attorney-client privilege is not extended to all the e-mail messages (e-mails), then "disastrous practical consequences for public entities across the Commonwealth" will result because municipal officials will be unable to conduct confidential discussions about legal advice they have received.  Declining to apply the attorney-client privilege to all the e-mails will surely not result in widespread alarm among municipal officials searching for a sanctuary to collect their thoughts.  In its wisdom, the Legislature already provides a mechanism for such confidential communications through specific exceptions to the general requirement that "meetings of a public body shall be open to the public."  G. L. c. 30A, § 20 (a).  For example, municipal officials may meet in executive session (closed to the public) to "discuss strategy with respect to . . . litigation if an open meeting may have a detrimental effect on the . . . litigating position of the public body and the chair so declares."  G. L. c. 30A, § 21 (a) (3).  The minutes of such an executive session are exempt from disclosure under the public records law "as long as publication may defeat the lawful purposes of the executive session, but no longer."  G. L. c. 30A, § 22 (f).  If town officials believed confidential discussions among themselves were warranted after receiving an opinion from town counsel, they could have followed the comprehensive procedures outlined in c. 30A and convened an executive session to discuss the legal advice received.  They eschewed those procedures and chose instead to exchange e-mails that are not subject to the attorney-client privilege.  The public has a right to know the content of those e-mails.
footnotes

     [1] Brooks S. Read.
     [2] The redacted e-mails were accompanied by a privilege log.
     [3] The open meeting law does not empower the division of open government to determine whether the assertion of attorney-client privilege was justified.  See G. L. c. 30A, § 24 (a), (e).
     [4] The Supreme Judicial Court has also endorsed the derivative attorney-client privilege, which protects communications made to "necessary agents" of the attorney or the client.  See Comcast, 453 Mass. at 307.  A per se rule would undermine this doctrine, which can protect communications made, for example, directly to a translator with no counsel present.  See United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961).
     [5] The Read-Kays argue it was error for the judge to rely on Mass. G. Evid. § 502(b)(4) because no appellate case has directly adopted it as the law.  While we recognize that the Massachusetts Guide to Evidence does not have the force of statute, it can provide instruction, as it "collect[s] the law of evidence from . . . common law and legislative sources."  Mass. G. Evid. § 102 note (2024).  Furthermore, in numerous cases, the Supreme Judicial Court has cited rule 502(b) for the general definition of the attorney-client privilege.  See, e.g., Facebook, 487 Mass. at 121; Comcast, 453 Mass. at 303; Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997).
     [6] As set forth supra, only thirteen of the fourteen total contested e-mails require us to consider whether each element of the attorney-client privilege is satisfied.
     [7] The privileged e-mails are dated March 29, 2016; May 26, 2016 (the portion from Jane Hotchkiss to Michael Lawson only); August 1, 2016; and May 11, 2017.  The e-mail dated December 12, 2017, is protected under the work product doctrine, as will be discussed below.
     [8] We also note that this is not a case where town officials communicated with each other at the behest of counsel to gather more information.  Contrast Upjohn Co. v. United States, 449 U.S. 383, 386-387, 397 (1981) (attorney-client privilege includes communications of employees gathering information for corporate counsel's internal investigation).  Nor is this a case where town officials exchanged e-mails "for the purpose of facilitating the rendition" of legal advice among various clients with a common interest.  Hanover Ins., 449 Mass. at 614 ("common interest doctrine does not create a new or separate privilege, but prevents waiver of the attorney-client privilege").
     [9] It would be a surprising result for a case that refused to put "public entities at an unfair disadvantage vis-à-vis private parties" to leave a wide swath of public entities without the privilege whenever a quorum of town leadership communicated with an attorney.  See Suffolk Constr., 449 Mass. at 446.
     [10] The Massachusetts Attorney General, tasked with enforcing the open meeting law, has consistently interpreted these provisions to mean that it does not have the authority to pierce the attorney-client privilege.  See, e.g., Office of the Attorney General, Open Meeting Law Opinion No. 2014-22, at 2 (March 3, 2014).
     [11] The Read-Kays also argue that the e-mail was not produced in anticipation of litigation because it was sent after the litigation began.  The court in DaRosa made clear that the standard is "during the pendency of litigation."  DaRosa, 471 Mass. at 459. Because the contested e-mail was directly related to the 2017 action, this argument fails.
     [12] We decline both parties' requests for an award of attorney's fees and costs.